UNITED STATES DISTRICT COURT
DISTRICT COURT OF CONNECTICUT

-------------------------------------------------------------------------X
SANDRA GUTIERREZ, GLADYS SELENE RAMON,        :
MADELYN RAMON, ARTURO LARA MUNOZ,             :
LIVIA GUTIERREZ on behalf of themselves and all    :       Civ. Action No.:
others similarly situated,                     :
                                              :
                    Plaintiffs,               :
                                              :
vs.                                           :
                                              :
LOS MARIACHIS, LLC, FOOD TRUCKS, LLC,         :
LOREN AGUIRRE, and JOSEPH FLAMINI             :
                                              :
                    Defendants.               :
-------------------------------------------------------------------------X       June 23, 2021

COLLECTIVE ACTION COMPLAINT

I.      NATURE OF CASE

1.      This action is brought to recover unpaid overtime wages, minimum wages, misappropriated wages and tips, unlawful deductions and other monies pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58 *et seq.* ("CMWA") for Plaintiffs Sandra Gutierrez, Gladys Selene Ramon, Madelyn Ramon, Arturo Lara Munoz, Livia Gutierrez, and all similarly situated persons who work or have worked for Defendants within the statutory period.

2.      Defendants operate a restaurant and bar located in Wallingford, Connecticut, as well as a food truck.

3.      Defendants required employees to work more than forty (40) hours per week but failed to pay them time and a half as required by law, falsified payment and wage records for employees, and did not comply with the requirements for reducing the server's minimum wage by applying the tip credit allowance.  Defendants also violated the law by confiscating and

retaining tips paid by customers by credit card, instead of paying the credit card tips to the servers who earned the gratuities.  Because Defendants violated the law regarding gratuities, they are not entitled to reduce the server's minimum wage rate by applying the tip credit allowance, and have deprived the servers of their statutory minimum wages under the FLSA and the CMWA.

4.     Defendants also have a policy of requiring servers and bartenders to pay the cost of unpaid bills due to customer walkouts.

5.     Plaintiffs allege, on behalf of themselves individually and all other similarly situated current and former non-exempt employees of Defendants who elect to opt into this action, that they are entitled to: (i) compensation for unpaid overtime wages and minimum wages and unlawful deductions; and (ii) liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, the CMWA, Connecticut Common Law, and Conn. Gen. Stat. § 52-564.

## II.      JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337 and has supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in the District of Connecticut under 28 U.S.C. § 1391, as Los Mariachis is located within the State of Connecticut and Defendants operate and conduct business in Connecticut.

### III.     THE PARTIES

A.     <u>Sandra Gutierrez</u>

8.     Plaintiff Sandra Gutierrez is an adult individual residing in Wallingford, Connecticut.

9.     Sandra Gutierrez was employed by Defendants from 2015 through March 2020, when the restaurant was closed due to the COVID-19 pandemic, and then again from July 2020 through November 2020.

10.     Sandra Gutierrez worked as a dishwasher, food truck driver, cook, and busser for Los Mariachis.  She also cleaned the restaurant bathroom, washed the patio, dumpster, and garage, and performed gardening work outside the restaurant.

11.     Between 2015 and 2018, Sandra Gutierrez was paid $8.00 per hour.

12.     Between January 2019 and April 2019, Sandra Gutierrez was paid $8.75 per hour.

13.     Between May 2019 and December 2019, Sandra Gutierrez was paid $9.00 per hour.

14.     Starting in June 2019, Sandra Gutierrez was also directed to work for Defendants' food truck.

15.     Sandra Gutierrez's hours varied from week to week but she regularly worked over forty hours a week.

16.     From in or about June 2019 through March 2020, she worked at both the Los Mariachis restaurant and food truck for a total of approximately 70-75 hours per week.

17.     In or about June 2019, when she began working at Defendants' food truck, Sandra Gutierrez was told that she would be earning $13.00 per hour and that she would be allowed to

keep tips from customers.  However, Defendants only paid her $12.00 per hour and she did not receive any tips paid by customers on credit cards.

18.     Sandra Gutierrez was paid below the statutorily required minimum wage rate of Connecticut.

19.     Throughout her employment, Sandra Gutierrez was paid at a straight-time rate and did not receive overtime wages at 1.5 times the minimum wage, or her regular hourly wage rate, for hours worked over 40 in a workweek.

B.     <u>Madelyn Ramon</u>

20.     Plaintiff Madelyn Ramon is an adult individual residing in Wallingford, Connecticut.

21.     Madelyn Ramon has been employed by Defendants from January 2017 through the present, except for when the restaurant was closed from mid-March 2020 to July 2020 due to the COVID-19 pandemic.

22.     Madelyn Ramon has worked as a dishwasher, food truck driver, busser, and server for Los Mariachis.

23.     From the start of her employment through about December 2017, Madelyn Ramon worked as a dishwasher.

24.     While working as a dishwasher Madelyn Ramon regularly worked approximately 44 hours per week.  She worked Sunday through Thursday from about 5:00 p.m. until 11:00 p.m., and Friday and Saturday from about 5:00 p.m. until midnight.

25.     During this time Madelyn Ramon was paid $10.00 per hour.

26.     Starting in January 2018, Madelyn Ramon began to work as a busser and server at Los Mariachis and was paid $6.40 per hour.

27.     From January 2018 through June 2019, Madelyn Ramon regularly worked 6 days per week for a total of approximately 65 hours per week.

28.     From July 2019 to August 2019, Madelyn Ramon regularly worked two days per week for a total of approximately 15 hours per week.

29.     From September 2019 through December 2019, Madelyn Ramon regularly worked seven days a week, from about 5:00 pm to 2:00 am, Monday to Friday in the restaurant, and 12:00 pm to 11:00 pm in the food truck, for a total of approximately 67 hours of work per week.

30.     From January through March 2020 and from July 2020 to the present, Madelyn Ramon has regularly been working six days per week from about 5:00 p.m. to 10:00 p.m. for a total of approximately 30 hours per week.

31.     Madelyn Ramon has been paid below the statutorily required minimum wage rate of Connecticut.

32.     From the start of her employment through March 2020, Madelyn Ramon was paid at a straight-time rate and has not received overtime wages at 1.5 times the minimum wage, or her regular hourly wage rate, for hours worked over 40 in a workweek.

33.     From July 2020 through the present, Madelyn Ramon has not been paid any wages from Defendants.  Her only compensation is the gratuities left for her by customers.

C.     <u>Gladys Selene Ramon</u>

34.     Plaintiff Gladys Selene Ramon is an adult individual residing in Wallingford, Connecticut.

35.     Gladys Selene Ramon was employed by Defendants from November 2018 through December 2020.

36.     Selene Ramon worked as a dishwasher, driver, and cook for Los Mariachis.

37.     Between November 2018 and April 2019, Selene Ramon worked as a cashier and was paid $10.00 per hour.

38.     During this time, Selene Ramon regularly worked Fridays from about 4:00 p.m. to 11:00 p.m., Saturdays from about 9:00 a.m. to 12:00 a.m., and Sundays from about 11:00 a.m. to 8:00 p.m.

39.     In or around May 2019, Selene Ramon began to work as a cook and received a raise in pay to $12.00 per hour.

40.     Selene Ramon received another raise to $14.00 per hour in or about July 2019.

41.     From November 2019 through the end of her employment, Selene Ramon worked fulltime at the food truck.

42.     From about May 2019 to mid-March 2020, Selene Ramon regularly worked Monday to Friday from about 8:00 a.m. to 9:00 p.m., Saturday from about 8:00 a.m. to 1:00 a.m., and Sunday from 8:00 a.m. to 7:00 p.m.  When working this schedule, Selene Ramon worked approximately 93 hours per week.

43.     After the start of the COVID-19 pandemic, Selene Ramon's hours decreased to be from about 9:00 a.m. to 8:00 p.m., seven days per week.  When working this schedule, Selene Ramon worked approximately 77 hours per week.

44.     Throughout September and October 2020, Selene Ramon worked longer hours on Fridays and Saturdays, from about 8:00 a.m. to 1:00 a.m. the next day because Defendants had contracts with Fairfield University and the University of New Haven, which required that Selene Ramon work at the food truck there until 1:00 a.m.  When working this schedule, Selene Ramon worked approximately 87 hours per week.

45.    Throughout her employment, Selene Ramon was paid at a straight-time rate and did not receive overtime wages at 1.5 times her regular hourly wage rate, for hours worked over 40 in a workweek.

D.    Arturo Lara Munoz

46.    Plaintiff Arturo Lara Munoz is an adult individual residing in New Haven, Connecticut.

47.    Arturo Lara Munoz has been employed by Defendant from November 2017 through the present, except for when the restaurant and food truck were closed from mid-March 2020 to July 2020 due to the COVID-19 pandemic.

48.    Arturo Lara Munoz has worked as a bartender and server at Los Mariachis.

49.    At the start of his employment Arturo Lara Munoz was paid $6.40 per hour.

50.    In or about January 2018, Arturo Lara Munoz received a raise to $7.00 per hour.

51.    Arturo Lara Munoz was subsequently given another raise and is currently paid $8.00 per hour.

52.    Arturo Lara Munoz's schedule varies from week to week but he regularly works approximately 55-60 hours per week.

53.    Arturo Lara Munoz has been paid below the statutorily required minimum wage rate of Connecticut.

54.    Throughout his employment, Arturo Lara Munoz has been paid at a straight-time rate and has not received overtime wages at 1.5 times the minimum wage, or his regular hourly wage rate, for hours worked over 40 in a workweek.

E.     Livia Gutierrez

55.     Plaintiff Livia Gutierrez is an adult individual residing in Wallingford, Connecticut.

56.     Livia Gutierrez began to work for Defendants in 2018, periodically covering shifts for other employees as needed until she was hired to work as a waitress from October 2020 to November 2020.

57.     From 2018 through mid-March 2020, when Livia Gutierrez worked covering other employees' shifts, she was regularly scheduled to work from about 3:00 p.m. to 9:00 p.m. Livia Gutierrez did not work from end-March 2020 to September 2020 due to the COVID-19 pandemic.

58.     From October 2020 to November 2020, Livia Gutierrez regularly worked four days per week from about 4:00 p.m. 1:00 a.m.

59.     From October 2020 to November 2020, Livia Gutierrez regularly worked the closing shift, cleaning and doing side-work after customers left at the end of the night.  Livia Gutierrez worked as a waitress from 4:00 p.m. to 9:00 p.m., and then from 9:00 p.m. to 1:00 a.m. she would clean and do side-work at the end of the shift.

60.     Defendants paid Livia Gutierrez $70 per shift, in cash when she worked covering shifts for other employees.

61.     From October 2020 to November 2020, Defendants paid Livia Gutierrez $6.40 per hour, by check.

62.     Livia Gutierrez was paid $6.40 per hour for all hours worked, including the time she spent doing uptipped work, *i.e.* side work cleaning and closing the restaurant after customers left.

8

63.     Livia Gutierrez was paid below the statutorily required minimum wage rate of Connecticut.

F.     Defendants

64.     Defendant Los Mariachis LLC is a domestic limited liability company owned by Defendant Loren Aguirre that employs Plaintiffs and operates Los Mariachis.

65.     Defendant Food Trucks LLC is a domestic limited liability company that employs Plaintiffs.  Defendants Loren Aguirre and Joseph Flamini are members of Food Trucks LLC.

66.     At all times relevant to this action, Los Mariachis LLC and Food Trucks LLC have been an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

67.     During the relevant period, Los Mariachis LLC and Food Trucks LLC had employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

68.     During the relevant period, Los Mariachis LLC and Food Trucks LLC had an annual gross volume of sales in excess of $500,000.

69.     Defendant Loren Aguirre ("Aguirre") is sued individually in his capacity as an owner, officer and/or agent of Los Mariachis LLC and Food Trucks LLC.

70.      Aguirre exercises sufficient control over the operations of Los Mariachis and Food Trucks LLC to be considered Plaintiffs' employer under the FLSA and CMWA.

71.     Aguirre oversees employee activities whenever he is present in the restaurant.

72.     Aguirre exercises authority regarding the managerial and administrative practices at Los Mariachis and Food Trucks LLC and is the final decision-maker regarding all policy changes and pay practices and is the cause of the wage violations alleged herein.

73.     Defendant Joseph Flamini ("Flamini") is sued individually in his capacity as an owner, officer and/or agent of Food Trucks LLC.  Flamini exercises sufficient control over the operations of Food Trucks LLC to be considered Plaintiffs' employer under the FLSA and CMWA.

74.     Flamini oversees employee activities, and exercises authority regarding the managerial and administrative practices of Food Trucks LLC and is a cause of the wage violations alleged herein.

75.     Aguirre and Flamini are both identified on manual checks made out to Gladys Selene Ramon for work she performed on the Los Mariachis Food Truck.

## IV.    FAILURE TO PAY OVERTIME WAGES

76.     The FLSA and CMWA require that Defendants pay overtime wages for all hours worked in excess of forty per week.

77.     Plaintiffs and other similarly situated employees regularly worked more than forty hours per week, but Defendants failed to pay them overtime wages at time and a half, and also failed to maintain accurate records of the hours that Plaintiffs and similarly situated employees worked.

78.     Madelyn Ramon has worked varying hours per week throughout her employment and has not received overtime pay at time and a half when working over forty hours per week. For example, from September 2019 through December 2019, Madelyn Ramon worked approximately 67 hours per week.  Defendants paid Madelyn Ramon at a straight-time rate for the hours worked over forty per week.

79.     Selene Ramon has not received overtime pay at time and a half when she has worked more than forty hours per week.  For example, between May 2019 and March 2020,

Selene Ramon regularly worked more than 90 hours per week, and she consistently worked more than 70 hours per week following March 2020, and even more during the months of September 2020 and October 2020.

80. Arturo Lara Munoz regularly works approximately 55-60 hours per week, and he has done so on a regular basis during his employment, but Defendants have not paid him overtime wages at time and a half and falsified his wage records so that they would not reflect the true extent of the hours that he worked.

81. Sandra Gutierrez also regularly worked more than forty hours per week. However, Defendants failed to pay her overtime wages at time and a half. Throughout her employment, she consistently worked at least approximately 56 hours per week. During other periods of time, such as when she worked on Defendants' food truck, she worked between 70-75 hours per week.

82. Defendants did not provide Sandra Gutierrez with wage statements or paystubs to reflect her hours worked, her wages paid, and taxes withheld.

## V. THE LAW REGARDING "TIPPED EMPLOYEES"

83. The FLSA and CMWA allow employers of "tipped employees" to pay their tipped employees at a rate below the federal and state minimum wages provided that they meet certain requirements including, *inter alia*, allowing them to keep all the tips that they earn, and keeping segregated time records indicating the time worked doing tipped service work (payable at the tipped minimum wage) versus non-tipped work (payable at the full minimum wage).

84. Restaurants in Connecticut are only permitted to pay servers less than the full minimum wage and take a credit on account of tips received by servers towards the satisfaction

of the minimum wage for servers if they fully comply with all the legal rules governing the allowance for a tip credit.

85.      During the time period relevant to this case, Connecticut regulations required restaurant employers to pay their servers the full minimum wage if they assigned them non-service work and failed to segregate the time spent on that non-service work and pay for that time at the full minimum wage. Conn. Agencies Regs. § 31-62-E4; *Stevens v. Vito's by the Water, LLC*, 2017 Conn. Super. LEXIS 4845 (Nov. 9, 2017); *Nettleton v. C&L Diners, LLC*, HHD-CV18-6129496-S (Conn. Super. Dec. 10, 2020).

86.      This rule prevents employers from taking advantage of servers by assigning them hours of non-service work like performing work when the restaurant is not even open to customers, and general cleaning and stocking, and paying for that work at less than the full minimum wage.

87.      Restaurant employers in Connecticut may only take a tip credit if the employee is actually performing service duties and receiving gratuities.

88.      Non-service work that does not earn tips must be compensated at the full minimum wage, but if the times are properly separated on an employee's time card, a tip credit can be taken for the hours in which the employee was performing service work.

89.      If the employer does not keep a segregated time record, no tip credit can be taken.

90.      In addition, during the time period relevant to this case, Connecticut regulations required restaurant employers to pay their servers the full minimum wage if they failed to "obtain a weekly statement signed by the employee attesting that he has received in gratuities the amount claimed as credit for part of the fair minimum wage," and if they failed to "record on a weekly basis as a separate item in the wage record" "the amount received in gratuities claimed as

a credit for part of the fair minimum wage." Conn. Agencies Regs. § 31-62-E3; *Stevens v. Vito's by the Water, LLC*, 2017 Conn. Super. LEXIS 4845 (Nov. 9, 2017); *Nettleton v. C&L Diners, LLC*, HHD-CV18-6129496-S (Conn. Super. Dec. 10, 2020).

91.    The FLSA and CMWA permit employees to participate in a "tip pool" where tipped employees pool all of their tips together and then redistribute them amongst themselves as they choose. Employers are not, however, permitted to retain a portion of the tips earned by the servers; nor are employers permitted to confiscate and retain all of the tips paid through credit card transactions instead of paying those tips to the employees who earned the gratuities.

## VI.    DEFENDANTS VIOLATED LAWS REGARDING TIPPED EMPLOYEES

92.    At any given time, Defendants employ approximately 15 servers who fall under the category of "tipped employees."

93.    Defendants apply a tip credit towards the wages of all tipped employees and pay them the Connecticut tipped minimum wage per hour, which as of January 1, 2017 was a minimum of $6.38 per hour for servers.

### A.    Defendants Failed to Segregate Non-Service Work

94.    Defendants required all servers to do hours of side-work each night at the beginning, throughout, and end of their shifts.

95.    Defendants assigned servers different tasks each night after the restaurant closed, including: cleaning the dessert case, vacuuming, rolling silverware, cleaning the soda station, cleaning the bathrooms, cleaning the patio, cleaning tables and cleaning the salad station. Defendants posted the nightly assignments in the restaurant.

96.    Servers were not paid at the full minimum wage for the time spent doing side-work, which was exclusively non-service, non-tipped work.

97.     The time spent doing side-work was not segregated on the servers' timecards or paystubs.

98.     Defendants violated Connecticut law and failed to pay Plaintiff the full minimum wage rate for all of the hours during which they performed "non-service" duties.

99.     Defendants' conduct in failing to pay Plaintiffs the full fair minimum wage for all hours in which they performed both "service" and "non-service" duties, while failing to segregate said work, is a violation of Conn. Agencies Regs. Section 31-62-E4, and the CMWA.

100.     Defendants compounded their error by failing to make a "good faith" effort to learn and comply with Connecticut law, as required to avoid penalty damages.

B.     Defendants Failed to Obtain Required Tip Statements

101.     During the relevant time period, Connecticut regulations required that employers claiming the service minimum wage credit "shall obtain weekly a statement signed by the employee attesting that he has received in gratuities the amount claimed as credit for part of the minimum fair wage. Such statement shall contain the week ending date of the payroll week for which credit is claimed." Conn. Agencies Regs. § 31-62-E3(c).

102.     The Connecticut Department of Labor provides a form "tip statement" for employers to use for such purpose.

103.     Defendants failed to obtain such signed tip statements from Plaintiff and all other servers.

C.     Defendants Failed to Record Amount of Tips Claimed as Credit As Separate Item in the Wage Record

104.     In addition, during the relevant time period, Connecticut regulations required employers to record "on a weekly basis as a separate item in the wage record" "the amount

received in gratuities claimed as a credit for part of the minimum fair wage." Conn. Agencies Regs. § 31-62-E3(b).

105.    Defendants did not comply with this requirement with respect to Plaintiffs and the other servers.

106.    In fact, during Plaintiffs' employment, Defendants flagrantly violated these requirements by including fabricated amounts for "cash tips" in Plaintiffs' pay stubs which did not actually reflect the amount of tips that Plaintiff received.  Someone other than Plaintiffs would enter an inaccurate number for the amount of cash tips that Plaintiffs received each week so that an inaccurate number for "cash tips" would appear on Plaintiffs' pay stubs.

107.    Defendants' conduct in failing to pay Plaintiffs and other servers the full fair minimum wage for all hours that they worked and for which Defendants failed to record on a weekly basis as a separate item in the wage record the amount received in gratuities claimed as a credit for part of the minimum fair wage is a violation of Conn. Agencies Regs. Section 31-62-E3(b) and the CMWA.

108.    Defendants deprived Plaintiffs, the FLSA Collective, and the CMWA Rule 23 Class of their statutory minimum wages under the FLSA and the CMWA.

109.    Defendants also failed to post mandatory wage posters and orders in the workplace.

## VII.    FALSE AND FRAUDULENT WAGE RECORDS

110.    In addition to these violations, and as part of an effort to perpetuate these violations, Defendants have engaged in a pattern and practice of creating false and fraudulent payroll, wage, and tax records for Plaintiffs and similarly situated employees.

111.    For instance, Defendants falsified the hours worked and the wages received by Sandra Gutierrez for 2020 and reported that Sandra Gutierrez received more wages than she actually received.  As a result, Sandra Gutierrez was required to pay more in taxes than she actually owed.

112.    Defendants also falsified the wages received by Madelyn Ramon for 2020 and reported that Madelyn Ramon received more wages than she actually received.  From July 2020 to present, Madelyn Ramon has not received any hourly wages from Defendants.  As a result, in 2020, Madelyn Ramon was required to pay more in taxes than she actually owed.

113.    Defendants also falsified the wages received by Gladys Selene Ramon for 2020 and reported that Gladys Selene Ramon received more wages than she actually received.  As a result, Gladys Selene Ramon was required to pay more in taxes than she actually owed.

114.    Defendants also falsified the wages received by Arturo Lara Munoz for 2020 and reported that Arturo Lara Munoz received more wages than he actually received.  As a result, Arturo Lara Munoz was required to pay more in taxes than he actually owed.

115.    Defendants also falsified the wages received by Livia Gutierrez in 2020 and reported that Livia Gutierrez received more wages than she actually received.  As a result, Livia Gutierrez was required to pay more in taxes than she actually owed.

116.    When challenged about the false reporting of wages and taxes, Loren Aguirre failed to correct the fraudulent records, and stopped providing paystubs which documented the fraudulent practice.

117.    The sample paystubs issued by Los Mariachis LLC to Madelyn Ramon that are attached to this Complaint as Exhibit A illustrate some of Defendants' illegal and fraudulent practices.

118.     During the two-week pay period between 9/28/2020 and 10/11/2020, Los

Mariachis issued Madelyn Ramon a paystub reflecting that she worked 78.82 hours, at a rate of

$6.40 per hour, but Los Mariachis LLC paid Madelyn Ramon $0.00 for what Defendants listed

as almost 80 hours of work.  For that pay period, Defendants entered a fraudulent amount of cash

tips ($2,012.00) in the wage record which is not equal to the amount of cash tips that Madelyn

Ramon actually received, and then reduced Madelyn Ramon's pay by 100 percent for federal and

state income taxes, and Social Security and Medicare.  As a result of this fraud, Defendants

received the benefit of Madelyn Ramon's labor, but Defendants did not pay her any wages for

that pay period.  Meanwhile, to the extent that customers paid any gratuities through credit card

transactions, Defendants typically confiscated and retained all tips paid via credit card instead of

paying the servers such as Madelyn Ramon the gratuities that they earned.

119.     As the paystubs attached as Exhibit A reflect, the pay period between 9/28/2020

and 10/11/2020 was just one example of Defendants' regular pattern and practice.  The year-to-

date ("YTD") totals from the pay period between 12/7/2020 and 12/20/2020 reflect that for the

entire year of 2020, Defendants listed Madelyn Ramon's YTD "total pay" as $6,713.65, but

Defendants withheld $6,042.29 from that amount for taxes.  Thus, Defendants only paid Plaintiff

Madelyn Ramon the difference between those two figures, $671.36, from Defendants' own

funds, for all of her labor during 2020.

120.     In early 2021, Madelyn Ramon challenged Loren Aguirre about her taxes and the

false information in her wage record and W-2 form for 2020.  Aguirre told her that he estimated

the amounts, and then Aguirre stopped providing Madelyn Ramon with paystubs for subsequent

pay periods.

## VIII.   UNLAWFUL DEDUCTIONS

121.   The CMWA prohibits employers from making deductions from employee wages, except for those permitted by law.

122.   Defendants failed to pay Plaintiffs all of the tips that they earned and that customers paid via credit card; Defendants confiscated and retained those credit card tips for themselves.

123.   Defendants regularly required Plaintiffs and the CMWA Rule 23 Class to cover the cost of overhead expenses, such as for customer walkouts.

124.   The expenses were primarily for the benefit and convenience of Defendants and operated as de facto deductions from employees' wages, causing them to earn less than the minimum wage.

## IX.   COLLECTIVE ACTION ALLEGATIONS

125.   The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and all similarly situated employees who work or have worked at Los Mariachis during the statutory period and elect to opt-in to this action (the "FLSA Collective").

126.    The FLSA Collective consists of approximately 30 or more similarly situated current and former employees of Defendants, who, over the last three years have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them wages due under the FLSA.

127.   As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA.  Defendants have violated the FLSA by failing to pay overtime to non-exempt employees such as Plaintiffs and members of the FLSA Collective

who worked more than forty hours per week, in addition to other violations.  Defendants apply

the same employment policies, practices, and procedures to all non-exempt employees.  This

policy and pattern or practice includes, *inter alia*, the following:

a. Failing to pay employees overtime wages at a rate of time and a half their regular rate of pay for all hours worked in excess of forty (40) hours per week;

b. failing to pay servers the minimum wage for all hours worked;

c. failing to provide servers with wage notices as required by law;

d. depriving servers of tips that they earned; and

e. failing to reimburse servers for covering unpaid customer bills.

128.    Defendants have engaged in this unlawful conduct pursuant to a corporate policy

of minimizing labor costs and denying employees compensation by knowingly violating the

FLSA and CMWA.

129.    Defendants' unlawful conduct has been intentional, willful, and in bad faith, and

has caused significant damage to Plaintiffs and the FLSA Collective.

130.    The FLSA Collective would benefit from the issuance of a court-supervised

notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly

situated employees are known to Defendants, are readily identifiable by Defendants, and are

locatable through Defendants' records.   These similarly situated employees should be notified of

and allowed to opt in to this action, pursuant to 29 U.S.C. § 216(b).

### COUNT ONE
### Fair Labor Standards Act – Unpaid Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

131.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

132.    The FLSA requires that employers pay employees overtime wage at the rate of

time and a half of the regular rate of pay for all hours worked in excess of forty per week.

133.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiffs and the FLSA Collective.

134.    The overtime wage provisions set forth in the FLSA, 29 U.S.C.  §§ 201, et seq. and the supporting federal regulations, apply to Defendants.

135.    Defendants failed to pay Plaintiffs and members of the FLSA Collective the wages to which they were entitled under the FLSA.

136.    Defendants willfully failed to pay Plaintiffs and the FLSA Collective at least the federal overtime wage for all hours worked in excess of forty per week.

137.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

138.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT TWO**
**Fair Labor Standards Act – Unpaid Minimum Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

139.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

140.    The FLSA requires that employers pay employees a minimum wage for all weekly hours worked up to forty.

141.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiffs and the FLSA Collective.

142.   The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, et seq. and the supporting federal regulations, apply to Defendants.

143.   Defendants failed to pay Plaintiffs and members of the FLSA Collective the wages to which they were entitled under the FLSA.

144.   Defendants willfully failed to pay Plaintiffs and the FLSA Collective at least the federal minimum wage for all hours worked in workweeks where *de facto* deductions drove Plaintiffs' and the FLSA Collective's wages below the required minimum wage in violation of the FLSA, 29 U.S.C. § 206.

145.   Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because, *inter alia*:

    a.   Defendants were required to but failed to inform Plaintiffs and the FLSA Collective of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m); and

    b.   Defendants confiscated and retained the tips belonging to Plaintiffs and the FLSA Collective, and made other unlawful deductions, in violation of the FLSA, 29 U.S.C. § 203(m) and supporting regulations.

146.   Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

147.   As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT THREE**
**Connecticut Minimum Wage Act – Unpaid Minimum Wages**
**(Brought on behalf of Plaintiffs and other employees who opt-in to this Action)**

148.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

149.    The CMWA requires that employers pay employees a minimum wage for all hours worked weekly up to forty.

150.    Defendants failed to pay Plaintiffs and other similarly situated employees the minimum wages to which they were entitled to under the CMWA.

151.    Defendants have willfully violated the CMWA by knowingly and intentionally failing to pay Plaintiffs and other similarly situated employees the minimum hourly wage.

152.    As a result of Defendants' violations of the CMWA, Plaintiffs and other similarly situated employees are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

**COUNT FOUR**
**Connecticut Minimum Wage Act – Unpaid Overtime Wages**
**(Brought on behalf of Plaintiffs and other employees who opt-in to this Action**

153.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

154.    The CMWA requires that employers pay employees overtime wages at time and a half their regular rate of pay for all hours worked in excess of forty per week.

155.    Defendants failed to pay Plaintiffs and other similarly situated employees the overtime to which they were entitled to under the CMWA.

156.    Defendants have willfully violated the CMWA by knowingly and intentionally failing to pay Plaintiffs and other similarly situated employees the overtime wages to which they are entitled.

157.    As a result of Defendants' violations of the CMWA, Plaintiffs and other similarly situated employees are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

## COUNT FIVE
### Connecticut Common Law – Unjust Enrichment
**(Brought on behalf of Plaintiffs and other employees who opt-in to this Action)**

158.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

159.    Defendants failed to pay monies owed and owing to Plaintiffs and other similarly situated employees for wages, tips, and deductions.

160.    Defendants have been unjustly enriched by this failure and justice requires that Defendants pay Plaintiffs and other similarly situated employees for such monies owed and owing.

161.    Due to Defendants' willful violations of the Connecticut common law, Plaintiffs and other similarly situated employees are entitled to restitution.

## COUNT SIX
### Connecticut Labor Law – Statutory Theft
**(Brought on behalf of Plaintiffs and other employees who opt-in to this Action)**

162.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

163.    Plaintiffs and other similarly situated employees were required to give Defendants a percentage of the gratuities they earned each day.

164.    Defendants wrongfully appropriated tips from Plaintiffs and other similarly situated employees.

165.    The tips retained by Defendants belonged to Plaintiffs and other similarly situated employees.

166.    Defendants are liable for statutory theft.

167.    Due to Defendants' willful violations, Plaintiffs and other similarly situated employees are entitled to recover from Defendants the amounts of any unlawful deductions and/or payments, and treble damages under Conn. Gen. Stat. § 52-564.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective, request that this Court enter a judgment:

a.      authorizing the issuance of notice at the earliest possible time to all eligible members of the FLSA Collective who are presently working at, or who have worked at any time during the time period of March 19, 2018 through the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, at Los Mariachis.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

b.      declaring that Defendants violated the overtime wage, minimum wage, tip credit, and tip pool provisions of the FLSA, the Connecticut Labor Law, and supporting Connecticut Department of Labor Regulations;

c.      declaring that Defendants violated the unlawful deductions provisions of the CMWA;

d.      declaring that Defendants' violations were willful;

e.      awarding Plaintiffs and the FLSA Collective damages for unpaid overtime wages and minimum wages;

h.      awarding Plaintiffs and the FLSA Collective damages for unauthorized deductions;

i.      granting judgment in favor of Plaintiffs and the FLSA Collective for compensatory damages due to Defendants' unjust enrichment;

j.      granting judgment in favor of Plaintiffs and the FLSA Collective and treble damages for statutory theft under Conn. Gen. Stat. § 52-564;

k. awarding Plaintiffs and the FLSA Collective liquidated damages in an amount equal to twice the total amount of the wages found to be due, pursuant to the FLSA and the CMWA;

l. awarding Plaintiffs and the FLSA Collective reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest pursuant the FLSA and the CMWA; and

m. such other and further relief in law or equity as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE FLSA COLLECTIVE

By: _____/s/Todd Steigman_____ _____

Todd Steigman (ct26875)
William G. Madsen (ct 09853)
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06103
Tel: (860) 246-2466
Fax: (860) 246-1794
Email:tsteigman@mppjustice.com
Email: wmadsen@mppjustice.com

- and -

Louis Pechman (pro hac vice forthcoming)
Laura Rodriguez (pro hac vice forthcoming)
Pechman Law Group PLLC
488 Madison Avenue - 11th Floor
New York, New York 10022
(212) 583-9500
pechman@pechmanlaw.com
rodriguez@pechmanlaw.com

# EXHIBIT A

WELLS FARGO BANK

LOS MARIACHIS LLC
105 NORTH COLONY ST
WALLINGFORD, CT 06492

10/16/2020

**PAY TO THE
ORDER OF**   **MADELYN RAMON GUTIERREZ**

$ 0.00
***NON-NEGOTIABLE***

****This is not a check. *****Advice of deposit only****

DOLLARS

**MADELYN RAMON GUTIERREZ**

redacted

MEMO

_____
AUTHORIZED SIGNATURE

**EMPLOYER**
LOS MARIACHIS LLC
105 NORTH COLONY ST
WALLINGFORD CT 06492

**PAY PERIOD**
Period Beginning: 09/28/2020
Period Ending: 10/11/2020
Pay Date: 10/16/2020
Total Hours: 78.82

**EMPLOYEE**
MADELYN RAMON GUTIERREZ

redacted

| OTHER PAY: | Current | Year To Date |
|---|---|---|
| Cash Tips | 2,012.00 | 15,999.00 |

**NET PAY:**  $0.00

**MEMO:**

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Regular Pay | 78.82 | 6.40 | 504.45 | 4,527.99 |

| DEDUCTIONS | Current | YTD |
|---|---|---|
| | | |

| TAXES | Current | YTD |
|---|---|---|
| Federal Income Tax | 286.77 | 2,107.41 |
| Social Security | 156.02 | 1,272.67 |
| Medicare | 36.49 | 297.64 |
| CT Income Tax | 25.17 | 478.21 |

| SUMMARY | Current | YTD |
|---|---|---|
| Total Pay | $504.45 | $4,527.99 |
| Taxes | $504.45 | $4,155.93 |
| Deductions | $0.00 | $0.00 |

**Net Pay**  $0.00

WELLS FARGO BANK

**LOS MARIACHIS LLC**
105 NORTH COLONY ST
WALLINGFORD, CT 06492

12/24/2020

PAY TO THE
ORDER OF

**MADELYN RAMON GUTIERREZ**

$ 0.00

***NON-NEGOTIABLE***

****This is not a check. *****Advice of deposit only****

DOLLARS

**MADELYN RAMON GUTIERREZ**

redacted

MEMO

AUTHORIZED SIGNATURE

**EMPLOYER**
LOS MARIACHIS LLC
105 NORTH COLONY ST
WALLINGFORD CT 06492

**PAY PERIOD**

| | |
|---|---|
| Period Beginning: | 12/07/2020 |
| Period Ending: | 12/20/2020 |
| Pay Date: | 12/24/2020 |
| Total Hours: | 55.47 |

**EMPLOYEE**
MADELYN RAMON GUTIERREZ

redacted

| **OTHER PAY:** | Current | Year To Date |
|---|---|---|
| Cash Tips | 863.00 | 23,429.00 |

| **NET PAY:** | |
|---|---|
| Acct# redacted | $156.25 |
| | $156.25 |

**MEMO:**

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Regular Pay | 55.47 | 6.40 | 355.01 | 6,713.65 |

| DEDUCTIONS | Current | YTD |
|---|---|---|
| | | |

| TAXES | Current | YTD |
|---|---|---|
| Federal Income Tax | 81.33 | 2,994.75 |
| Social Security | 75.51 | 1,868.84 |
| Medicare | 17.66 | 437.07 |
| CT Income Tax | 24.26 | 741.63 |

| SUMMARY | Current | YTD |
|---|---|---|
| Total Pay | $355.01 | $6,713.65 |
| Taxes | $198.76 | $6,042.29 |
| Deductions | $0.00 | $0.00 |

| Net Pay | $156.25 |
|---|---|